IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE:

| | |
|---|---|
| MCCOY 6, LLC, | Case No. 09-00304 |
| AUGUSTA APARTMENTS, LLC, | Case No. 10-00303 |
| GRAND CENTRAL BUILDING, LLC, | Case No. 10-00638 |
| Debtors in Possession. | Chapter 11 |

UNITED STATES TRUSTEE'S MOTION IN SUPPORT OF
MOTION OF FIRST UNITED BANK AND TRUST
FOR APPOINTMENT OF TRUSTEE(S) IN RELATED CHAPTER 11 CASES

The United States Trustee, W. Clarkson McDow, Jr., by his Assistant United States Trustee, Debra A. Wertman, files this Motion In Support Of Motion Of First United Bank And Trust For Appointment Of Trustee(s) In Related Chapter 11 Cases, and states the following:

First United Bank's Motion:

1. The United States Trustee agrees with and supports the bases presented in First United Bank's Motion for the appointment of a chapter 11 trustee(s). [1]

    A. The Plan of Reorganization in McCoy 6, LLC does not appear to be feasible. Although the United States Trustee did not file an objection to the Plan Of Reorganization, the United States Trustee has reviewed the Amended Plan and compared it with the financial information available. The United States Trustee has concluded that even with the amended

---

[1] The United States Trustee does not take a position on the validity or extent of the secured liens for First United Bank. He does, however, support the Motion generally and believes the appointment of a trustee would best serve all of the creditors in the cases not just secured creditors.

budget, the Plan will not cash flow making the payments projected. To continue to battle over a Plan that does not have the financial backing to support it is not in the best interest of creditors and is a waste of judicial resources. A trustee can take a fresh look at the debtors' finances and sales attempts and begin a new campaign for generating funds for secured and unsecured creditors. Under the current management, McCoy 6 has consistently continued to lose money. There is no basis to believe that management can make a turn around at this point.

B. Although the United States Trustee does not object to management taking a reasonable income prior to the filing or after the filing, First United Bank raises valid concerns about the *amount* of monies moved from the Augusta Apartments and Grand Central LLCs prior to the filing of the cases. A substantial amount of monies were moved while creditors were not being paid and management was aware of the continuing financial deterioration of the LLCs. A trustee can review the payments to management and determine if they were reasonable and appropriate in light of the debtors' deteriorating conditions.

C. The United States Trustee does not object to counsel receiving fair and reasonable compensation for services rendered on behalf of the debtors even if the total fees reaches $200,000. The United States Trustee is concerned that all of the funds for payment of attorney fees were generated by the Augusta Apartments while work was being performed in McCoy 6 without any compensation. This scenario raises concerns that money paid

from the Augusta Apartments to counsel in the year before it filed served in some manner as a source of funds in the McCoy 6 case for attorney fees even though it may have been unintentional. In retrospect, these cases are so intricately intertwined financially and administratively because of the way current management operated their businesses that counsel cannot work on one case without touching issues in the other cases. A trustee will be able to review the source of the funds for the attorney fees and make a determination as to whether the services rendered were on behalf of the Augusta Apartments or a related entity.[2]

D. There has been ample testimony that many potentially preferential or fraudulent transfers were made to or on behalf of family members or to other Warner entities while creditors were not being paid. There has never been an attempt by management to address the transfers or to recover them into the estates for the benefit of creditors. In all three of the cases, a payout to unsecured creditors under current operations appear to be non-existent. An independent trustee can carefully examine the possible preferential or fraudulent transfers and pursue them if appropriate. Current management will not. This is, of course, a possible source of payout for unsecured creditors.

---

[2] The four Warner brothers who comprise the current management of the three debtors in possession, Benjamin Warner, K istian Warner, Andrew Warner, and Monroe Warner, have a number of entities that are not in bankruptcy. Based on the deposition testimony, management used each entity as a source of cash where and when it was available for another entity's bills. There has not been any proof of repayment of these "loans" between entities.

Factual Developments Since First United Bank Filed its Motion:

2. Since First United Bank filed its Motion for the appointment of a trustee, depositions of current management have been held. The United States Trustee has had a presence at the depositions. It is clear from the deposition testimony that prepetition, management used the funds from the Augusta Apartments and Grand Central to pay the debts of other Warner entities and family members. The practice was so common place that further administration of these cases should be under substantive consolidation as it does not appear that management has made an attempt to, or can, readily identify the all of the payments to other related entities or family members from the debtor LLCs. A trustee will identify inappropriate transfers of funds from the Augusta Apartments and the Grand Central to other Warner entities and family members and file adversary proceedings where appropriate.

3. On June 3, 2010 counsel for First United Bank took the deposition of Donald Dempsey, the on site manager for the Augusta Apartments. Dempsey testified that he has received inquiries from perspective purchasers for the Augusta Apartments assets.[3] He testified that a common theme of the callers was that they were interested in dealing with a lending institution or a neutral party instead of the Warner management. This revelation was disturbing to the United States Trustee. It has been represented throughout the cases that management was trying to find a buyer for the assets but that they had been unsuccessful in finding a purchaser for different reasons. The question now arises about how many possible purchasers decided not to delve into the details for a purchase of the assets in these cases because they had to deal with the Warner family. Dempsey did not provide an explanation as to why these inquiries expressed a

---

[3] Dempsey did not identify how many inquiries he has received or the identities of the inquiries.

preference to not deal with the Warners, but whatever the reason, it is difficult to represent that a purchaser cannot be found if all possibilities for a sale cannot be entertained. A trustee, as an independent party from the Warner family, can attempt to contact these interested parties and can market the properties in a new light. Without a doubt, this action is in the best interest of creditors.

    4.    On June 3, 2010 counsel for First United Bank took the deposition of Kristian Warner, one of the 25% shareholders of the debtors in possession. Counsel questioned Mr. Warner about a developing deal with the Moriah Group, a Texas based capital group that is negotiating with PNC and the debtor, Augusta Apartments, to purchase the debt instrument of PNC.. PNC holds an approximate $20,000,000 secured claim in the Augusta Apartments case. When asked if the Moriah Group deal had any incentives for the Warners or other employees, Kristian Warner testified that the Moriah Group wanted to retain the employees which included him and that the Moriah Group would release the personal liabilities of the four Warner brothers but that the brothers would have to forego the Augusta. Essentially, this means that the management of the Augusta Apartments would agree to a stay lift so that the Moriah Group could foreclose on the Augusta Apartments' assets. The United States Trustee does not dispute that the members of the LLCs have an interest in the outcome of the case. However, their interest is subordinated to the interests of the creditors. There is no doubt that First United Bank would object to the stay being lifted for the Moriah Group to foreclose. A trustee could attempt to sell the assets in these cases without an agenda that included benefits for insiders. Considering Dempsey's testimony about the inquiries that went no further than him, the litigation that will ensue if the Moriah Group attempts to lift the stay, and the insider benefits to a Moriah Group purchase of the PNC debt, a trustee is the most logical way to ensure that the best interests of

creditors have been met.

5. The most compelling basis for the appointment of a chapter 11 trustee in these cases is the testimony elicited from Benjamin F. Warner, Sr. at his Section 341 meeting in Clarksburg on Wednesday, June 2, 2010. [4] Benjamin Warner and certain family members each had a 1/6 interest McCoy Farm, LLC. McCoy Farm, LLC owned 140 acres in Barbour County. Sometime in 2005 McCoy Farm took a construction loan from First United Bank to build a lodge. Testimony was that the loan amount was $800,000 to $900,000 but that not all of the funds were used in the construction of the lodge. The United States Trustee asked Benjamin Warner if McCoy Farm had debt at this time. He responded that the debt for the construction loan was paid off when *McCoy 6* refinanced property in Morgantown and used some of the proceeds from that loan were to pay off First United Bank.

6. Since that testimony, the United States Trustee has learned that on March 26, 2007, 23 months before the filing of the McCoy 6, LLC chapter 11 case, McCoy 6 closed a $3,000,000 refinancing loan on the Mountaineer Court property with Fifth Third Bank to payoff a $1,700,000 debt with Sky Bank. The Closing Statement, Exhibit A, reveals that $636,710.65 of the loan proceeds were paid to First United Bank in satisfaction of the *McCoy Farm* loan. Whether this payoff is characterized as a capital distribution to the members of McCoy 6, a loan to McCoy Farm or some other transfer, the transfer should have been disclosed on the McCoy 6 schedules or Statement of Financial Affairs and it *was not disclosed*. The members of McCoy 6 encumbered McCoy 6 property, to the detriment of McCoy 6 creditors, to satisfy the debt of McCoy Farm. McCoy Farm is not in bankruptcy. The Warner family has no incentive to investigate or recover that transfer of the $636,710.65. It is essential that a trustee recover those

---

[4]Benjamin Warner filed a voluntary chapter 7 petition on April 22, 2010.

funds for the McCoy 6 creditors. Although this transaction occurred in McCoy 6, because it directly benefitted the McCoy Farm, LLC members and because it was not disclosed, a trustee is mandated to investigate the other chapter 11 debtors for similar transactions that benefitted family members.

WHEREFORE, the United States Trustee moves the court to appoint a chapter 11 trustee for the three debtor in possession cases.

Dated: June 9, 2010

                Respectfully submitted:

                W. CLARKSON MCDOW, JR.
                UNITED STATES TRUSTEE, REGION FOUR
                By Counsel

/s/ Debra Wertman
WV Bar No. 3987
Office of U.S. Trustee
Robert C. Byrd Federal Courthouse
300 Virginia Street East, Suite 2025
Charleston, WV 25301
(304) 347-3400

CERTIFICATE OF SERVICE

I certify that the foregoing Objection was served upon the following either electronically or by United States mail, postage prepaid, on June 9, 2010:

John P. Lacher
Electronic Service

Robert O. Lampl
Electronic Service

Roger Schlossberg
Electronic Service

Kimberly Luff Wakim
Electronic Service

/s/ Debra A. Wertman