Patrick M. Flatley
United States Bankruptcy Judge

Dated: Wednesday, July 03, 2013 4:50:33 PM

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| AUGUSTA APARTMENTS, LLC, | ) | Case No. 10-303 |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |

## MEMORANDUM OPINION

Before the court is Edward R. Kohout's Application to Employ Counsel *Nunc Pro Tunc* and Fee Application. Mr. Kohout seeks retroactive approval of his employment and approval of $24,000 in fees for legal services rendered on behalf of Augusta Apartments, LLC ("Debtor"). The United States Trustee ("UST") objects to Mr. Kohout's fee application based on the untimeliness of his disclosure of compensation and *nunc pro tunc* employment application. For the reasons stated herein, the court denies Mr. Kohout's motion to employ *nunc pro tunc* and fee application.

## BACKGROUND

On February 18, 2010, the day before the Debtor filed bankruptcy, the Debtor paid Robert O. Lampl, John P. Lacher, and Elsie R. Lampl ("Lampl Law Firm") a $100,000 retainer for representation in its Chapter 11 case. Of the $100,000, the firm retained $76,000; the remainder was paid to Mr. Kohout.[1] The Debtor and Mr. Kohout discussed the terms of his retention but did not memorialize their fee arrangement. The parties agreed that Mr. Kohout would serve as local bankruptcy counsel for the Debtor and be responsible for litigating at least

---

[1] The Lampl Law Firm's Disclosure of Compensation indicates that they received $75,000 from the Debtor for legal services relating to its bankruptcy case. And according to section nine of the Debtor's Statement of Financial Affairs ("SOFA"), the Debtor paid the Lampl Law Firm $75,000 and Mr. Kohout $24,000. However, according to the Lampl Law Firm, they received $76,000, and the $1,000 differential is an error.

1

one adversary proceeding. The Debtor paid Mr. Kohout $24,000; the amount being based on paying him $2,000 per month for his anticipated legal services.

On February 19, 2010, the Debtor filed for bankruptcy relief under Chapter 11. The Debtor, as a debtor in possession, filed an application to employ the Lampl Law Firm. The application listed a variety of bankruptcy services to be rendered, the hourly rates of the attorneys, and connections with the Debtor. The Debtor also filed a motion for admission for the Lampl Law Firm to appear *pro hac vice* with Mr. Kohout acting as local counsel. The court approved these motions. On July 21, 2010, the court granted the appointment of a Chapter 11 trustee pursuant to 11 U.S.C. § 1104(a), and on the same date, the UST appointed Robert L. Johns as trustee. Mr. Johns never sought to employ Mr. Kohout on behalf of the bankruptcy estate. On July 17, 2012, the Debtor's bankruptcy case was converted to a case under Chapter 7 with Mr. Johns acting as trustee.

On November 16, 2012, the UST filed a motion to examine attorney employment and compensation of Mr. Kohout. The UST's motion was the first time a party asked the court to address Mr. Kohout's compensation and precipitated Mr. Kohout's motion to employ *nunc pro tunc* and fee application which was filed February 15, 2013 — nearly three years after the Debtor filed for bankruptcy relief. The UST objected to Mr. Kohout's motion and the court held an evidentiary hearing on March 21, 2013 to consider the matter.

At the start of the evidentiary hearing, Mr. Kohout stated that the hearing was "disgusting" and he was "disgusted" by having to appear. He stated that the only reason he filed a *nunc pro tunc* employment application was because the UST notified the court about his compensation. Mr. Kohout acknowledged that he never filed a statement disclosing his compensation or an application for employment. His excuses for failing to do so were numerous: He was unfamiliar with Chapter 11 practice; he only works on consumer Chapter 7 cases; he is not familiar with the Bankruptcy Code; he has little knowledge of the rules governing Chapter 11 cases; and he was "way out of his element" acting as counsel in a Chapter 11 case. With respect to the $24,000 fee he was paid, Mr. Kohout stated that the money is not sitting in a trust account and that he spent it years ago.[2] At the conclusion of the hearing, the court took the matter under advisement.

---

[2] At the evidentiary hearing, Mr. Kohout disputed for the first time that the $24,000 he received came from the Debtor. But in his *nunc pro tunc* application, he stated in paragraph one that the

2

**DISCUSSION**

Mr. Kohout seeks retroactive approval of his employment and approval of $24,000 in compensation. His application notes that the Debtor paid the Lampl Law Firm $100,000, of which he received $24,000 from the Lampl Law Firm by check. Mr. Kohout alleges that he was working as an adjunct member of the Lampl Law Firm and that he did not "feel" that he had to file an employment application. His only other explanation for not filing an employment application was that he was unaware the Bankruptcy Code required court approval of his employment. In response, the UST argues that Mr. Kohout's motion should be denied on two grounds such that the court should order him to disgorge his $24,000 fee: first, he violated 11 U.S.C. § 327 by failing to demonstrate that extraordinary circumstances exist warranting approval of his *nunc pro tunc* application because simple oversight does not justify retroactive employment; and second, he violated Bankruptcy Rule 2016(b) and 11 U.S.C. § 329(a) by not disclosing his compensation with the court.[3]

Attorneys must seek prior court approval before they can be employed on behalf of the bankruptcy estate. 11 U.S.C. § 327(a); Fed. R. Bankr. P. 2014(a) (detailing the requirements of employment applications under § 327). Section 327(a) provides that a trustee may employ an attorney that does not hold an "interest adverse to the estate" and that person must be "disinterested." § 327(a). Attorneys seeking compensation for legal services cannot be paid from the bankruptcy estate until approval of their application for employment. *E.g.*, *In re Shirley*, 134 B.R. 940, 943 (B.A.P. 9th Cir. 1992) ("Court approval of the employment of counsel for a debtor-in-possession is the *sine qua non* to counsel getting paid."). Even if an

---

Debtor paid Lampl Law Firm $100,000. And in an exhibit to his motion, he attached a copy of the $24,000 check he received; the check description section notes "Augusta Apts., LLC." At the hearing, the court found paragraph one to be a judicial admission. Although the dispute was technically resolved, Mr. Kohout stipulated that he would concede that the Debtor was the source of the $100,000 if the UST furnished the $100,000 check paid to the Lampl Law Firm. The UST filed with the court a copy of the $100,000 check paid to Lampl Law Firm's trust account. The check was written on the Debtor's Clear Mountain Bank account and signed by an officer of the Debtor.

[3] The UST also questioned Mr. Kohout's failure to make any disclosure regarding certain "property transfers for attorney fees" involving him and individuals or entities connected with the related bankruptcy cases of McCoy 6, LLC, Square at Falling Run, LLC, and Grand Central Building, LLC. The court perceives no connection between those allegations and, if proven, their application to the matter before the court. Thus, without prejudice to the UST's pursuit of her allegations regarding the transfers in any related case, the court will not address them as part of the UST's objection in this case.

attorney is not seeking compensation from the bankruptcy estate, attorneys representing the debtor must seek court approval under § 327. *In re Engel*, 124 F.3d 567, 571 (3d Cir. 1997). Without court approval under § 327, the attorney will "be treated as a volunteer notwithstanding that the services rendered may have been beneficial to the bankruptcy estate." *In re Rennie Petroleum Corp.*, 384 B.R. 412, 415 (Bankr. E.D. Va. 2008). Denial of requested compensation and disgorgement of any money received is an appropriate remedy for noncompliance with § 327. *In re Land*, 943 F.2d 1265, 1267-68 (10th Cir. 1991).

Bankruptcy courts, however, are empowered to grant a retroactive employment application which may permit payment to debtor's counsel for services rendered on behalf of the bankruptcy estate. Approval of retroactive employment applications is equitable in nature and "the court's ultimate decision to grant or deny such applications is necessarily discretionary." *In re Jarvis*, 53 F.3d 416, 421 (1st Cir. 1995). Although the Fourth Circuit has yet to address the applicable standard in determining whether to grant a retroactive employment application, the majority of circuit courts require the applicant to demonstrate that the court would have authorized the appointment under § 327, and the delay in seeking court approval resulted from extraordinary circumstances. *See In re Cong. Hotel Corp.*, No. 11-26732-PM, 2012 WL 1144421, at *4 (Bankr. D. Md. Apr. 4, 2012) (collecting cases). This court joins the majority of courts, and holds that granting retroactive employment is limited to those situations where an applicant can demonstrate that § 327 would have been satisfied if a timely application were made, and the delay in seeking court approval stemmed from extraordinary circumstances. *E.g. In re Keren Ltd. P'ship.*, 189 F.3d 86, 87 (2d Cir. 1999) (employing extraordinary circumstances standard); *In re Jarvis*, 53 F.3d at 420 (same); *In re Land*, 943 F.2d at 418 (same); *In re Arkansas*, 798 F.2d 645, 649-60 (3d Cir. 1986) (same). *But see In re Singson,* 41 F.3d 316 (7th Cir.1994) (adopting "excusable neglect" standard for retroactive employment applications). Courts apply an array of factors in deciding whether extraordinary circumstances exist.[4] But one prevalent common denominator — recognized even under the more elastic excusable neglect

---

[4] In assessing whether extraordinary circumstances exist, courts often look to the non-exhaustive formulation expressed in *In re Arkansas*, 798 F.2d 645 (3d Cir. 1986). In *Arkansas*, the Third Circuit instructed bankruptcy courts to consider "whether the applicant or some other person bore responsibility for applying for approval; whether the applicant was under time pressure to begin service without approval; the amount of delay after the applicant learned that initial approval had not been granted; the extent to which compensation to the applicant will prejudice innocent third parties; and other relevant factors." 798 F.2d at 650.

standard — is that simple oversight or neglect in timely filing an employment application does not warrant retroactive approval of employment. *See In re Aultman Enterprises*, 264 B.R. 485, 493 (E.D. Tenn. 2001) ("Even those courts that have adopted a more lenient 'excusable neglect' standard have held 'simple neglect' is insufficient to excuse non-compliance with section 327."); 3 *Collier on Bankruptcy*, ¶ 327.03[3] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2013) ("The majority of courts hold that simple neglect or inadvertence on the part of the applicant in failing to file a timely retention application under section 327 is not a sufficient basis for granting retroactive approval of employment.").

Debtor's counsel must also file a statement with the court disclosing, among other things, the amount of compensation paid or agreed to be paid. 11 U.S.C. § 329(a); Fed. R. Bankr. P. 2016(b) (providing the disclosure requirements required by § 329). Section 329(a) provides that "any attorney representing a debtor . . . in connection with" the debtor's bankruptcy case must file with the "court a statement of compensation paid" if such payment was made within one year prior to the filing of the bankruptcy petition. § 329(a). Section 329(a) disclosure requirements are mandatory and require forthright disclosure of the precise nature of the fee arrangement. *Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park-Helena Corp.)*, 63 F.3d 877, 881 (9th Cir. 1995); *see In re Saturley*, 131 B.R. 509, 517 (Bankr. D. Me. 1991) ("Counsel's fee revelations must be direct and comprehensive."). And the disclosure statement must be filed regardless of the source of compensation or whether the attorney applies for compensation. Fed. R. Bankr. P. 2016(b); *In re Engel*, 124 F.3d at 571. Bankruptcy Rule 2016(b) requires the filing of a disclosure statement within 14 days after the order for relief; timeliness is critical under § 329(a) and Bankruptcy Rule 2016(b), *see In re Whaley,* 282 B.R. 38, 41 (Bankr. M.D. Fla. 2002) ("If every attorney waited until he or she is caught to file a statement of disclosure, the entire concept of mandatory disclosure would become a farce."). Belated disclosure due to negligence or inadvertent omissions does not justify failing to timely comply with the prescriptions of § 329(a). *See, e.g.*, *Park–Helena Corp.*, 63 F.3d at 882 ("Even a negligent or inadvertent failure to disclose fully relevant information [in a Bankruptcy Rule 2016 statement] may result in a denial of all requested fees."); *Jensen v. U.S. Trustee (In re Smitty's Truck Stop, Inc.)*, 210 B.R. 844, 849 (B.A.P. 10th Cir. 1997) ("Even a negligent or inadvertent failure to disclose the retainer is sufficient to deny fees."). Attorneys that fail to comply with § 329 and Bankruptcy Rule 2106(b) risk forfeiting the "right to receive compensation for services rendered on behalf of the debtor

and may be ordered to disgorge fees already received." *In re J.T. Thompson, USA*, No. 2:12-BK-26473-PC, 2012 WL 4461650, at *5 (Bankr. C.D. Cal. Sept. 25, 2012) (citations omitted).

The court cannot grant Mr. Kohout's *nunc pro tunc* application because he failed to demonstrate extraordinary circumstances exist justifying his delay in filing an employment application. Mr. Kohout contends that the court should construe the Lampl Law Firm's employment application as his employment application because he was an "adjunct" member of the firm. The Lampl Law Firm, however, emphatically denies any professional affiliation with Mr. Kohout, and he did not offer any evidence suggesting any connection with them. Moreover, the Lampl Law Firm's employment application does not seek to employ Mr. Kohout: the application does not mention his name, state his professional services to be rendered, or note any connections he may have with the Debtor. *See* Fed. R. Bankr. P. 2014(a). Mr. Kohout was responsible for filing his own employment application and bore that responsibility alone.[5] He was simply unaware that § 327 required him to seek approval of his employment: At the evidentiary hearing, he stated that he was unfamiliar with the Bankruptcy Code and that he was "out of his element" acting as counsel in a Chapter 11 case. Mr. Kohout's oversight of § 327 does not warrant retroactive approval of his employment application. *E.g.*, *Land*, 943 F.2d at 1268 ("Simple neglect will not justify *nunc pro tunc* approval of a debtor's application for the employment of a professional."); *In re Shirley*, 134 B.R. 940, 943 n.4 (B.A.P. 9th Cir. 1992) ("Mere negligence does not constitute an exceptional circumstance justifying the entry of a retroactive order."). The court cannot ignore that Mr. Kohout's application came nearly three years after the commencement of the case and three months *after* the issue of his employment was raised by the UST's motion to examine his employment and compensation. These sort of lengthy delays militate against equitable relief. Thus, the court finds that the delay before Mr.

---

[5] Mr. Kohout filing an application for admission *pro hac vice* on behalf of the Lampl Law Firm does not constitute an employment application. Of course, an application for admission *pro hac vice* and application for employment under § 327 serve entirely different purposes. Bankruptcy Rule 2014(a) requires applicants to state, among other things, "the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered" and connections with the debtor. Fed. R. Bankr. P. 2014(a); *see* § 327. Applications for *pro hac vice* admission have no such requirements.

Kohout sought court approval of his employment did not stem from extraordinary circumstances.[6]

Mr. Kohout also violated § 329 and Bankruptcy Rule 2016(b) by not disclosing that he was paid by the Debtor. Mr. Kohout's $24,000 payment was made "in contemplation of or in connection with" the Debtor's bankruptcy case.[7] § 329(a). Mr. Kohout was paid on the eve of bankruptcy with the intention that he would act as local bankruptcy counsel for the Debtor and litigate at least one adversary proceeding on its behalf. *See In re Blackburn*, 448 B.R. 28, 42 (Bankr. D. Idaho 2011) (finding that representation in adversary proceedings clearly has a "connection with" the bankruptcy case). As of entry of this memorandum opinion, Mr. Kohout has yet to file a disclosure statement under Bankruptcy Rule 2016(b).[8] In fact, by Mr. Kohout's own admission, the only reason he finally informed the court of his compensation was because the UST challenged the propriety of his legal fees. Mr. Kohout requests the court excuse his noncompliance under § 329 because he was unaware of his statutory obligation to file a statement with the court. His ignorance does not absolve his noncompliance: Negligent or inadvertent omissions do not justify failing to comply with the mandates of § 329(a). *E.g.*, *In re Park-Helena Corp.*, 63 F.3d at 881; *Jensen v. U.S. Trustee (In re Smitty's Truck Stop, Inc.)*, 210 B.R. 844, 849 (B.A.P. 10th Cir. 1997). Mr. Kohout therefore violated Bankruptcy Rule 2016(b)

---

[6] Because the court finds that Mr. Kohout failed to demonstrate extraordinary circumstances justifying his delay, the court will not consider whether he could have been employed under § 327.

[7] Although section nine of the Debtor's SOFA reflects this pre-bankruptcy payment to Mr. Kohout, this does not elide Mr. Kohout's duty under § 329. If the Debtor's SOFA satisfied Mr. Kohout's duty under § 329, it would eviscerate an attorney's separate responsibility to disclose under § 329 and Bankruptcy Rule 2016(b). *See In re Blackburn*, 448 B.R. 28, 40 (Bankr. D. Idaho 2011) ("[T]he disclosure requirements under the Code and Rules are not merely aspirations, they are mandatory."). Indeed, the Debtor's SOFA is a statement required by the Debtor, it is not Mr. Kohout's disclosure. *See id.* ("They [§ 329 and Bankruptcy Rule 2016(b)] impose an independent duty on an attorney to disclose the precise nature of the fee arrangement with the debtor . . . .").

[8] Mr. Kohout was required to file a disclosure under Bankruptcy Rule 2016(b) regardless of the type of retainer he received — flat fee, security, and "classic" retainers are all subject to the disclosure requirement under § 329. *See Barron v. Countryman*, 432 F.3d 590, 597 (5th Cir. 2005) ("A classic retainer, paid prepetition, is outside the estate and the purview of § 330, though it remains subject to disclosure and reasonableness review under § 329 of the Bankruptcy Code."); *In re Woodcraft Studios, Inc.*, 464 B.R. 1, 13 (N.D. Cal. 2011) ("[A]ll retainers, regardless of type and when they are received, are subject to disgorgement in response to disclosure violations.").

and § 329(a) by failing to make a timely disclosure after the Debtor filed for bankruptcy relief. His violation of § 329(a) is grounds for denying his entire fee. *E.g.*, *In re Hooper*, No. 93-11599-AB, 2001 WL 34054526, at *10 (Bankr. E.D. Va. Oct. 29, 2001) ("'[I]n cases involving an attorney's failure to disclose his fee arrangement under § 329 or Rule 2016 . . . the courts have consistently denied all fees.'") (quoting *Mapother & Mapother v. Cooper (In re Downs)*, 103 F.3d 472, 478 (6th Cir. 1996)); *see also In re J.T. Thompson, USA*, 2012 WL 4461650, at *5.

## CONCLUSION

The court is well aware that disgorgement is a severe remedy and takes no delight in its imposition. *But see In re Kroeger Prop. and Dev., Inc.,* 57 B.R. 821, 822-23 (B.A.P. 9th Cir. 1986) ("Since professionals are charged with knowledge of the law, there is no unjust hardship in requiring them to observe the strict requirements of Section 327."). But the court cannot overlook the nature and extent of Mr. Kohout's noncompliance with the Bankruptcy Code: Mr. Kohout ignored both his duty to disclose under § 329 and the requirement to seek approval for his employment under § 327.[9] Under the circumstances of this case, either of these failures warrants denial of all fees. The court discerns no mitigating facts upon which a less drastic remedy can be fashioned; Mr. Kohout's lack of compliance with the Bankruptcy Code is an abject failure. For the above-stated reasons, Mr. Kohout must disgorge the $24,000 fee he received to Mr. Johns, the Chapter 7 trustee.

Finally, it is evident to the court, based largely upon Mr. Kohout's own admissions, but based also on the record developed in connection with the court's disposition of this matter, that Mr. Kohout's familiarity with and appreciation of Chapter 11 bankruptcy practice is woefully lacking.[10] He is hereby sternly admonished by the court for taking on the duties and

---

[9] Even if the court granted Mr. Kohout's application for employment *nunc pro tunc* to the date of the Debtor's bankruptcy filing and ignored his § 329 violation, his entitlement to compensation would be cut off as of the date Mr. Johns was appointed as Chapter 11 trustee. As of that date, July 21, 2010, Mr. Kohout's billing statements submitted in conjunction with his application for employment indicates he only accrued $3,975 in fees for services rendered to the Debtor.

[10] The court also has some concern as to whether Mr. Kohout properly handled the $24,000 retainer he received. "The general rule is that, unless shown to be otherwise, a retainer constitutes funds held in trust for the benefit of the debtor, i.e., a security retainer." *In re Pannebaker Custom Cabinet Corp.*, 198 B.R. 453, 459-60 (Bankr. M.D. Pa. 1996). If the fee arrangement was in the form of a security retainer, then, as aptly noted by the UST, ethical issues may arise because a debtor retains an interest in the funds until services are rendered and approved pursuant to § 330; funds unearned or unapproved at the conclusion of the case remain property of the debtor's estate. *See In re McDonald Bros. Constr.*, 114 B.R. 989, 999 (Bankr.

responsibilities of counsel to a Chapter 11 debtor without possessing the requisite knowledge and experience necessary to ably perform that role.

A separate order will be entered contemporaneously with this Memorandum Opinion pursuant to Fed. R. Bankr. P. 9021.

---

N.D. Ill.) (Wedoff, J.). *See generally* W. Va. Rule Prof. Conduct 1.15(a) ("A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with representation separate from the lawyer's own property. Funds shall be kept in a separate account designated as a 'client's trust account' . . . ."); *Lawyer Disciplinary Bd. v. Kupec*, 505 S.E.2d 619, 631-32 (W. Va. 1998). At the evidentiary hearing, Mr. Kohout unequivocally stated that he never held the $24,000 payment in a trust account and spent the money years ago.

Notwithstanding these observations, the court declines to find that the Debtor and Mr. Kohout entered into a security retainer fee arrangement given that such a finding is unnecessary to the court's disposition and the record regarding the issue was not sufficiently developed by either party.